**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ESTATE OF DONOVAN L. LEWIS, | Case No. 2:24-cv-01841 |
| Plaintiff, | |
| | Judge Michael H. Watson |
| v. | |
| | Magistrate Judge Kimberly A. Jolson |
| THE CITY OF COLUMBUS, OHIO, *et al.*, | |
| Defendants. | |

## ANSWER OF DEFENDANTS CITY OF COLUMBUS, OHIO, AND ELAINE BRYANT

For their answer to the complaint filed on April 18, 2024 by Plaintiff Estate of Donovan L. Lewis, by and through its Administrator Rebecca Duran ("the Complaint"), Defendants City of Columbus, Ohio and Elaine Bryant ("Defendants") state the following:

1.      Defendants deny the allegations contained in Paragraph 1 of the Complaint.

2.      In response to the allegations contained in Paragraph 2 of the Complaint, Defendants admit that in 1999, the DOJ filed suit against the City and that the City successfully defended that lawsuit which was dismissed with no finding of fault. Answering further, the City requires all of its employees to obey the Constitutions of the United States and the State of Ohio and all federal, state, and local laws. Defendants deny any remaining allegations contained in Paragraph 2 of the Complaint.

3.      Defendants deny the allegations contained in Paragraph 3 of the Complaint.

4.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 4 of the Complaint.

5.      Defendants deny the allegations contained in Paragraph 5 of the Complaint.

6.     In response to the allegations contained in Paragraph 6 of the Complaint, Defendants admit: (a) in August 2019, Matrix, a third-party consultant hired by the City, released the report of its operational review of the Columbus Division of Police; (b) one of Matrix's many recommendations was that "CDP must address the significant disparity of use of force against minority residents by continuing intense training, education, monitoring and reporting on use of force within the Division"; and (c) that Matrix wrote on page 208 of its report that "When examining use of force applications from a demographic perspective there was a clear and discernable disparity of application between 'black' and 'white' contacts." Defendants deny any remaining allegations contained in Paragraph 6 of the Complaint.

7.     In response to the allegations contained in Paragraph 7 of the Complaint, Defendants state: (a) protests occurred in Columbus in May and June of 2020; (b) multiple Plaintiffs filed a federal lawsuit against the City and six CPD officers in the case *Alsaada v. City of Columbus*, 536 F. Supp. 3d 216 (S.D. Ohio 2021); (c) a preliminary injunction hearing occurred over the course of seven days in the *Alsaada* case; and (d) Judge Marbley's decision granting a preliminary injunction stated, "This case is the sad tale of officers, clothed with the awesome power of the state, run amok." Defendants deny all remaining allegations contained in Paragraph 7 of the Complaint.

8.     In response to the allegations contained in Paragraph 8 of the Complaint, Defendants admit: (a) in 2021, the City asked the United States Department of Justice to review its police operations; (b) in their request to the DOJ, the City's Mayor and City Attorney wrote that despite "steadfast efforts to advance change, the City has been met with fierce opposition from leadership within the Columbus Division of Police"; and (c) that letter stated that the City's request was about "reforming the entire institution of policing in Columbus." Defendants deny all remaining allegations contained in Paragraph 8 of the Complaint.

9.      In response to the allegations contained in Paragraph 9 of the Complaint, Defendants admit that in April of 2021, a CPD helicopter crew spelled "CPD" during a patrol over an East Side neighborhood and were not found to have committed misconduct. Defendants deny all remaining allegations contained in Paragraph 9 of the Complaint.

10.     Defendants deny the allegations contained in Paragraph 10 of the Complaint.

11.     In response to the allegations contained in Paragraph 11 of the Complaint, Defendants admit that after 2:20 a.m. on August 30, 2022, members of the Zone 3 Enforcement Team were attempting to arrest 20-year old Donovan Lewis ("Lewis") at his apartment because he had multiple arrest warrants. Answering further, Defendants state: (a) Lewis had one felony arrest warrant; (b) one arrest warrant was issued on August 10, 2022 in Franklin County Municipal Court Criminal Case No. 2022-CRB-11850, a domestic violence case in which Lewis had beaten his pregnant girlfriend in August of 2022; (c) another arrest warrant was issued on August 12, 2022 in Franklin County Municipal Court Criminal Case No. 2020-CRB-8473 (a 2020 assault case in which the charge was amended to an M3 criminal mischief charge) because Lewis had violated his probation by assaulting his mother and stepfather; and (d) a capias had been issued on May 19, 2022 in Franklin County Common Pleas Criminal Case No. 22-CR-1717 (a felony case in which Lewis was indicted for improperly handling a firearm in a motion vehicle) because Lewis failed to appear for his May 4, 2022 arraignment. Defendants deny the remaining allegations contained in Paragraph 11 of the Complaint.

12.     In response to the allegations contained in Paragraph 12 of the Complaint, Defendants state: (a) CPD Sergeant Chance Knox, along with Officers Harry Dorsey, Justin Dodrill, and Jack Randall ("the Officers") were working as part of the Zone 3 Enforcement Team; (b) the Officers knocked and announced their presence at Mr. Lewis' front door for over ten minutes, identified

themselves as Columbus Police, and ordered the occupants to open the apartment's door; (c) Mr. Lewis and the other occupants of the apartment disobeyed those commands over the course of many minutes; and (d) Officer Dorsey then aired for CPD K9 Officer Anderson to respond to the scene. Defendants deny any remaining allegations contained in Paragraph 12 of the Complaint.

13. In response to the allegations contained in Paragraph 13 of the Complaint, Defendants admit: (a) Anderson opened the bedroom door; (b) Lewis was on the bed when the bedroom door was opened; (c) Anderson shot Lewis; (d) Lewis was mortally wounded by the gunshot; (e) Lewis was placed in handcuffs; and (f) Lewis was told to stop resisting. Answering further, Defendants state that Lewis had raised his right arm towards the officers as if in a shooting position while holding a dark object in his right hand immediately before Anderson fired his single shot. Defendants deny the remaining allegations contained in Paragraph 13 of the Complaint.

14. In response to the allegations contained in Paragraph 13 of the Complaint, Defendants admit: (a) Anderson was an employee of the City of Columbus working as a Columbus police officer on August 30, 2022; and (b) Anderson was found to be out of policy ten times since 2001. Defendants deny the remaining allegations contained in Paragraph 14 of the Complaint.

15. Defendants deny the allegations contained in Paragraph 15 of the Complaint.

16. Defendants admit the allegations contained in Paragraph 16 of the Complaint.

17. In response to the allegations contained in Paragraph 17 of the Complaint, Defendants admit: (a) Knox, Dorsey, Randall, and Dodrill had decided to arrest Lewis; (b) Lewis was a 20-year-old Black man; and (c) the Officers believed that Lewis was in Apartment H. Defendants deny the remaining allegations contained in Paragraph 17 of the Complaint.

18. In response to the allegations contained in Paragraph 18 of the Complaint, Defendants admit that Knox, Dorsey, Randall, and Dodrill were attempting to arrest Lewis because Lewis had

multiple arrest warrants. Answering further, Defendants state: (a) Lewis had one felony arrest warrant; (b) one arrest warrant was issued on August 10, 2022 in Franklin County Municipal Court Criminal Case No. 2022-CRB-11850, a domestic violence case in which Lewis had beaten his pregnant girlfriend in August of 2022; (c) another arrest warrant was issued on August 12, 2022 in Franklin County Municipal Court Criminal Case No. 2020-CRB-8473 (a 2020 assault case in which the charge was amended to an M3 criminal mischief charge) because Lewis had violated his probation by beating his mother and stepfather; and (d) a capias had been issued on May 19, 2022 in Franklin County Common Pleas Criminal Case No. 22-CR-1717 (a felony case in which Lewis was indicted for improperly handling a firearm in a motion vehicle) because Lewis failed to appear for his May 4, 2022 arraignment. Defendants deny the remaining allegations contained in Paragraph 18 of the Complaint.

19.     Defendants deny the allegations contained in Paragraph 19 of the Complaint.

20.     Defendants deny the allegations contained in Paragraph 20 of the Complaint.

21.     In response to the allegations contained in Paragraph 21 of the Complaint, Defendants admit: (a) as Officers approached Lewis' door, one officer asked, "What's his name?" and another responded, "I don't know. Donovan."; (b) one officer sang a little and belched; and (c) one officer went back to a police cruiser to confirm Lewis' name. Defendants deny the remaining allegations contained in Paragraph 21 of the Complaint.

22.     In response to the allegations contained in Paragraph 22 of the Complaint, Defendants admit: (a) at approximately 2:24:43 a.m., Knox, Dorsey, and Randall stood outside of Lewis' apartment; (b) Knox initially knocked, in the "shave and a haircut, two bits" pattern, multiple times; and (c) Knox initially yelled "Yo D!" and did not identify himself as a police officer when he initially yelled, "Yo D!."

23.　　In response to the allegations contained in Paragraph 23 of the Complaint, Defendants admit that at 2:27:03 a.m., Knox stated, for the first time, "It's Columbus Police."

24.　　In response to the allegations contained in Paragraph 24 of the Complaint, Defendants state that Knox continuously knocked and announced the officers' presence at Lewis' front door for many minutes, stating their identity as Columbus Police, and ordering the occupants of Apartment H to come to the door, and at 2:28:16 a.m., Knox announced, "Apartment H, come to the door. We're not leaving" Defendants deny the remaining allegations contained in Paragraph 24 of the Complaint.

25.　　In response to the allegations contained in Paragraph 25 of the Complaint, Defendants state that at 2:31:50 a.m., Knox stated to Dorsey, "Well somebody's in here. The deadbolt's locked. I'm not walking away from this" and Dorsey responded, "I agree."

26.　　In response to the allegations contained in Paragraph 26 of the Complaint, Defendants admit that Knox shouted, "Donovan, if you don't come to the door, I'm gonna kick it in! If I have to come in there and get you, you're gonna get tased!" Defendants deny the remaining allegations contained in Paragraph 26 of the Complaint.

27.　　In response to the allegations contained in Paragraph 27 of the Complaint, Defendants state that Knox continued issuing multiple commands to the occupants of Apartment H which were being continuously ignored. Defendants admit that one of the things that Knox stated during this time was "Come to the door, or I'm gonna boot the door in!"

28.　　Defendants admit the allegations contained in Paragraph 28 of the Complaint.

29.　　In response to the allegations contained in Paragraph 29 of the Complaint, Defendants admit that at 2:32:36 a.m., Dorsey aired for Anderson to respond to 3295 Sullivant.

30.　　Defendants admit the allegations contained in Paragraph 30 of the Complaint.

31.　　Defendants admit the allegations contained in Paragraph 31 of the Complaint.

32.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 32 of the Complaint.

33.     In response to the allegations contained in Paragraph 33 of the Complaint, Defendants admit: (a) the police said they were looking for Donovan and asked if anyone else was in the apartment; and (b) Knox said to the men, "We're gonna send the dog in here in a second, so if he doesn't come out..." Defendants deny any remaining allegations contained in Paragraph 33 of the Complaint.

34.     In response to the allegations contained in Paragraph 34 of the Complaint, Defendants admit that Dorsey stated: "You know who is in the apartment that you're in. He's going to get bit by a dog. So if he's in there, tell us that he's in there." Defendants deny any remaining allegations contained in Paragraph 34 of the Complaint.

35.     In response to the allegations contained in Paragraph 35 of the Complaint, Defendants admit that Anderson arrived at the apartment along with his dog. Defendants deny the timing alleged in the Complaint.

36.     In response to the allegations contained in Paragraph 36 of the Complaint, Defendants admit: (a) Anderson was 59 years old; (b) he had been a police officer for 30 years; and (c) his duty hours were 9:00 p.m. to 4:00 a.m. Defendants deny any remaining allegations contained in Paragraph 36 of the Complaint.

37.     Defendants deny the allegations contained in Paragraph 37 of the Complaint.

38.     Defendants deny the allegations contained in Paragraph 38 of the Complaint.

39.     Defendants deny the allegations contained in Paragraph 39 of the Complaint.

40.     Defendants deny the allegations contained in Paragraph 40 of the Complaint.

41.     In response to the allegations contained in Paragraph 41 of the Complaint, Defendants admit: (a) Anderson was working as a CPD officer; (b) Dorsey aired for Anderson to respond to the scene; and (c) Anderson responded to Lewis' apartment with his dog. Defendants deny the remaining allegations contained in Paragraph 41 of the Complaint.

42.     In response to the allegations contained in Paragraph 42 the Complaint, Defendants admit: (a) Anderson stood in the doorway of the apartment; (b) Anderson sent the K-9 into the apartment; (c) the dog went into the back of the apartment; (d) Lewis made a sound when he said something to the dog; and (e) the dog returned towards Anderson. Defendants deny the timing alleged in the Complaint. Defendants deny any remaining allegations contained in Paragraph 42 of the Complaint.

43.     In response to the allegations contained in Paragraph 43 of the Complaint, Defendants admit: (a) Anderson redirected the dog towards the rear of the apartment; (b) the dog returned to the back of the apartment and barked; (c) Lewis again made a sound when he again said something to the dog; and (d) the dog returned towards Anderson. Defendants deny any remaining allegations contained in Paragraph 43 of the Complaint.

44.     In response to the allegations contained in Paragraph 44 of the Complaint, Defendants admit that Page 58, Lines 6-9 of Anderson's November 29, 2023 Deposition reads as follows: Q: So, in other words, if the dog sees the suspect in the room and then comes back out, it's because the dog doesn't see that person as a threat. A. Yes, sir. Further answering Paragraph 44 of the Complaint, Defendants lack knowledge or information sufficient to form a belief about whether the dog entered the bedroom. Defendants deny any remaining allegations contained in Paragraph 44 of the Complaint.

45.     In response to the allegations contained in Paragraph 45 of the Complaint, Defendants admit: (a) Anderson again redirected the dog towards the rear of the apartment; (b) the dog went to

the bedroom area; (c) Lewis slammed the bedroom door; and (d) the dog barked outside of the closed bedroom door. Defendants deny any remaining allegations contained in Paragraph 45 of the Complaint.

46.    Defendants admit the allegations contained in Paragraph 46 of the Complaint.

47.    In response to the allegations contained in Paragraph 47 of the Complaint, Defendants admit that an officer said "Has somebody got a Taser?" but deny that the response was "He's got one" as alleged in Paragraph 47 of the Complaint.

48.    Defendants admit the allegations contained in Paragraph 48 of the Complaint.

49.    Defendants admit the allegations contained in Paragraph 49 of the Complaint.

50.    In response to the allegations contained in Paragraph 50 of the Complaint, Defendants admit: (a) three Columbus police officers and a dog were in the apartment; and (b) the officers in the apartment had their firearms drawn. Defendants deny the timing alleged in the Complaint. Defendants deny Plaintiff's allegation that the officers were searching for Lewis simply because he was accused of committing a misdemeanor and missing a court date. Rather, Lewis had arrest warrants for a felony gun charge, a domestic violence incident in which he had beaten his pregnant girlfriend, and a probation violation that occurred when he had beaten his mother and stepfather. Defendants deny any remaining allegations contained in Paragraph 50 of the Complaint.

51.    In response to the allegations contained in Paragraph 51 of the Complaint, Defendants admit that Anderson holstered his gun and leashed the dog. Defendants deny the timing alleged in Paragraph 51 of the Complaint.

52.    In response to the allegations contained in Paragraph 52 of the Complaint, Defendants admit: (a) Anderson opened a door with his right hand, with his weapon holstered, while holding the

K-9 with his left hand; (b) no one was in there; and (c) he closed that door. Defendants deny the remaining allegations contained in Paragraph 52 of the Complaint.

53.      Defendants admit the allegations contained in Paragraph 53 of the Complaint.

54.      Defendants admit the allegations contained in Paragraph 54 of the Complaint.

55.      In response to the allegations contained in Paragraph 55 of the Complaint, Defendants admit: (a) Knox shouted "Hands" at Lewis; (b) Knox turned on the flashlight on his gun; (c) the light illuminated Lewis; and (d) Lewis was shirtless. Defendants deny the timing alleged in Paragraph 55 of the Complaint. Defendants deny the remaining allegations contained in Paragraph 55 of the Complaint.

56.      In response to the allegations contained in Paragraph 56 of the Complaint, Defendants admit: (a) Anderson drew his weapon; (b) Anderson fired a single shot with his right hand; and (c) Anderson was still holding the K-9 with his left hand. Defendants deny the timing alleged in Paragraph 56 of the Complaint. Defendants deny the remaining allegations contained in Paragraph 56 of the Complaint.

57.      In response to the allegations contained in Paragraph 57 of the Complaint, Defendants admit: (a) Lewis was shot in the abdomen; and (b) Knox said "Oh" immediately after the shot was fired. Defendants deny the timing alleged in Paragraph 57 of the Complaint. Defendants deny the remaining allegations contained in Paragraph 57 of the Complaint.

58.      Defendants deny the allegations contained in Paragraph 58 of the Complaint.

59.      In response to the allegations contained in Paragraph 59 of the Complaint, Defendants admit: (a) Anderson quickly holstered his gun with his right hand; (b) Anderson was still holding the dog with his left hand; and (c) the dog was barking when Anderson holstered his gun. Defendants deny the remaining allegations contained in Paragraph 59 of the Complaint.

60.     Defendants deny the allegations contained in Paragraph 60 of the Complaint.

61.     In response to the allegations contained in Paragraph 61 of the Complaint, Defendants admit that Knox did not fire his weapon. Defendants deny that Knox had a view nearly identical to Anderson's view.

62.     Defendants deny the allegations contained in Paragraph 62 of the Complaint.

63.     In response to the allegations contained in Paragraph 63 of the Complaint, Defendants admit: (a) Knox continued shouting "Hands! Hands! Hands!"; and (b) Lewis raised his hands into the air a couple of times before rolling back onto the bed. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 63 of the Complaint.

64.     Defendants admit the allegations contained in Paragraph 64 of the Complaint.

65.     Defendants admit the allegations contained in Paragraph 65 of the Complaint.

66.     In response to the allegations contained in Paragraph 66 of the Complaint, Defendants admit: (a) Knox and Dodrill entered Lewis' bedroom; (b) Knox ordered "Hands behind your back! Do it now!"; (c) Knox told officers to air for a medic; (d) Dorsey aired for a medic and said "officer involved"; and (e) Randall had already aired for a medic prior to Dorsey's airing for a medic. Defendants deny any remaining allegations contained in Paragraph 66 of the Complaint.

67.     In response to the allegations contained in Paragraph 67 of the Complaint, Defendants admit: (a) Lewis was slumped over on the bed; (b) Knox grabbed Lewis right hand and placed it behind his back to handcuff him; and (c) Lewis could be heard breathing. Defendants deny any remaining allegations contained in Paragraph 67 of the Complaint.

68.     In response to the averments contained in Paragraph 68 of the Complaint, Defendants admit that an officer stated, "Stop resisting! He's pulling away." Answering further, Defendants state

that Lewis was pulling away as was stated. Defendants deny any remaining allegations contained in Paragraph 68 of the Complaint.

69.     In response to the allegations contained in Paragraph 68 of the Complaint, Defendants admit that Knox and Dodrill handcuffed Lewis. Answering further, Defendants deny that the officers saw Lewis bleeding at that point but do not dispute that the gunshot wound caused him to bleed. Defendants deny any remaining allegations contained in Paragraph 69 of the Complaint.

70.     In response to the allegations contained in Paragraph 70 of the Complaint, Defendants admit: (a) Knox told other officers to "glove up and start rendering aid"; and (b) Dorsey removed Lewis' garments to search for his injury with assistance from Randall. Defendants deny any remaining allegations contained in Paragraph 70 of the Complaint.

71.     Defendants deny the allegations contained in Paragraph 71 of the Complaint.

72.     Defendants admit the allegations contained in Paragraph 72 of the Complaint but deny the timing of the events as alleged in Paragraph 72 of the Complaint.

73.     In response to the allegations contained in Paragraph 73 of the Complaint, Defendants admit that Dorsey, Randall, and another officer carried Lewis down the stairs.

74.     In response to the allegations contained in Paragraph 74 of the Complaint, Defendants admit that Dorsey was trying to get Lewis down the stairs to get him to a medic and lost his grip and Lewis hit the stairs when that occurred. Defendants deny any remaining allegations contained in Paragraph 74 of the Complaint.

75.     In response to the allegations contained in Paragraph 75 of the Complaint, Defendants admit that officers laid Lewis on a patch of grass outside and again applied pressure to Lewis' wound. Defendants deny the timing of the events as alleged in Paragraph 75 of the Complaint. Defendants deny any remaining allegations contained in Paragraph 75 of the Complaint.

76.     Defendants admit the allegations contained in Paragraph 76 of the Complaint.

77.     In response to the allegations contained in Paragraph 77 of the Complaint, Defendants admit that Lewis still had a pulse and was still breathing. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 77 of the Complaint.

78.     Defendants admit the allegations contained in Paragraph 78 of the Complaint but deny the timing of the events as alleged in the Paragraph 78 of the Complaint.

79.     Defendants admit the allegations contained in Paragraph 79 of the Complaint.

80.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 80 of the Complaint.

81.     In response to the allegations contained in Paragraph 81 of the Complaint, Defendants state: (a) one of the men who exited Lewis' apartment had a knife; (b) Lewis was holding a black vape pen in his right hand when he raised his right arm towards the officers immediately before the shooting; (c) Lewis dropped the vape pen after Anderson's shot; and (d) the vape pen was on Lewis' bed after he dropped it. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 81 of the Complaint.

82.     Defendants deny the allegations contained in Paragraph 82 of the Complaint.

83.     Defendants admit the allegations contained in Paragraph 83 of the Complaint.

84.     In response to the allegations contained in Paragraph 84 of the Complaint, Defendants admit: (a) additional officers and supervisors walked over; (b) Dodrill started to say who was involved; (c) Dodrill stated "I was coming up right behind him."; and (d) a supervising officer pointed at Dodrill's body camera and Dodrill turned off the recording. Defendants deny any remaining allegations contained in Paragraph 84 of the Complaint.

85.     Defendants admit the allegations contained in Paragraph 85 of the Complaint.

86.     In response to the allegations contained in Paragraph 86 of the Complaint, Defendants admit: (a) Knox says, "Kill your cameras. Kill the cameras."; and (b) everyone had turned off their cameras at various times. Defendants deny any remaining allegations contained in Paragraph 86 of the Complaint.

87.     In response to the allegations contained in Paragraph 87 of the Complaint, Defendants state that later at the scene, Sgt. James Ingles and three other officers were talking, and Ingles asked, "What else do you think that we need?" and an officer asked him, "Just obvious question. Is it a white guy or black guy?" Sgt. Ingles answered, "Light skinned male black. Biracial." A third officer then said, "So, yes." Defendants deny any remaining allegations contained in Paragraph 87 of the Complaint.

88.     Defendants admit the allegations contained in Paragraph 88 of the Complaint.

89.     In response to the allegations contained in Paragraph 89 of the Complaint, Defendants admit that In May 2021, the City of Columbus settled legal claims after a Columbus Police officer shot and killed Andre Hill, and the officers did not render the type of aid that Defendants believe should have occurred during that incident.

90.     Defendants admit the allegations contained in Paragraph 90 of the Complaint.

91.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 91 of the Complaint.

92.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 92 of the Complaint.

93.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 93 of the Complaint.

94.     In response to the allegations contained in Paragraph 94 of the Complaint, Defendants state that Anderson shot Lewis at 2:37:20 a.m.

95.     Defendants deny the allegations contained in Paragraph 95 of the Complaint. Defendants deny Plaintiff's characterization of Anderson's demonstration of Lewis' actions as being a "false claim" as Lewis had raised his right arm towards the officers as if in a shooting position while holding a dark object in his right hand before Anderson fired.

96.     In response to the allegations contained in Paragraph 96 of the Complaint, Defendants admit that Anderson said, "I'm going to have to go" and he leashed the dog, which he had still been holding with his left hand. Defendants deny any remaining allegations contained in Paragraph 96 of the Complaint.

97.     In response to the allegations contained in Paragraph 97 of the Complaint, Defendants admit: (a) Anderson raised his right arm as if in a shooting position and stated, "He fucking come up like this. But I mean…"; and (b) Randall did not respond.  Defendants deny any remaining allegations contained in Paragraph 97 of the Complaint.

98.     Defendants admit the allegations contained in Paragraph 98 of the Complaint.

99.     In response to the allegations contained in Paragraph 99 of the Complaint, Defendants admit: (a) Anderson whispered "fuck" as he walked back to his cruiser; and (b) Lewis later died from the gunshot wound. Defendants deny the remaining allegations contained in Paragraph 99 of the Complaint.

100.    In response to the allegations contained in Paragraph 100 of the Complaint, Defendants deny Plaintiff's allegation that Anderson never provided any aid or medical care as his actions of removing the dog led to Lewis being provided immediate medical aid and care. Defendants admit that Anderson did not intervene with the medical aid that he knew was already being provided

to Lewis by multiple other officers. Defendants deny any other allegations contained in Paragraph 100 of the Complaint.

101.     Defendants deny the allegations contained in Paragraph 101 of the Complaint.

102.     Defendants deny the allegations contained in Paragraph 102 of the Complaint.

103.     Defendants deny the allegations contained in Paragraph 103 of the Complaint.

104.     Defendants deny the allegations contained in Paragraph 104 of the Complaint.

105.     Defendants deny the allegations contained in Paragraph 105 of the Complaint.

106.     Defendants deny the allegations contained in Paragraph 106 of the Complaint.

107.     Defendants deny the allegations contained in Paragraph 107 of the Complaint.

108.     Defendants deny the allegations contained in Paragraph 108 of the Complaint.

109.     Defendants deny the allegations contained in Paragraph 109 of the Complaint.

110.     Defendants deny the allegations contained in Paragraph 110 of the Complaint.

111.     In response to the allegations contained in Paragraph 111 of the Complaint, Defendants admit: (a) in March of 2023, Anderson retired from the Columbus Division of Police; and (b) Anderson retired in bad standing because he retired during a pending investigation into this incident.  Defendants deny any other allegations contained in Paragraph 111 of the Complaint.

112.     Defendants admit the allegations contained in Paragraph 112 of the Complaint.

113.     In response to the allegations contained in Paragraph 113 of the Complaint, Defendants state that Anderson has asserted his Fifth Amendment rights and deny the allegations contained in Paragraph 113 of the Complaint.

114.     Defendants deny the allegations contained in Paragraph 114 of the Complaint.

115.     Defendants deny the allegations contained in Paragraph 115 of the Complaint.

116.     Defendants deny the allegations contained in Paragraph 116 of the Complaint.

117.    Defendants deny the allegations contained in Paragraph 117 of the Complaint.

118.    Defendants deny the allegations contained in Paragraph 118 of the Complaint.

119.    Defendants deny the allegations contained in Paragraph 119 of the Complaint.

120.    In response to the allegations contained in Paragraph 120 of the Complaint, Defendants state: (a) Joseph Hines was arrested by multiple CPD officers on August 29, 2012 in the Ohio State University Campus area; (b) Mr. Hines resisted arrest and injured CPD Officer Thomas DeWitt; and (c) Officer DeWitt punched Mr. Hines during the arrest in an attempt to get Mr. Hines into handcuffs. Defendants deny the remaining allegations contained in Paragraph 120 of the Complaint.

121.    In response to the allegations contained in Paragraph 121 of the Complaint, Defendants state: (a) Mr. Hines filed a civil rights lawsuit; (b) a jury found that Officer DeWitt used excessive force during the arrest; (c) no other CPD officer was found to have used excessive force during the arrest; (d) the City was not listed as a defendant in the Amended Complaint; (e) the City was not ordered to pay $30,000 in damages, plus Mr. Hines' attorneys' fees as alleged in Paragraph 121 of the Complaint; (f) Mr. Hines was awarded $30,000 in compensatory damages; and (g) Mr. Hines was awarded his attorneys' fees pursuant to 42 U.S.C. § 1988 as a prevailing party in a 42 U.S.C. § 1983 action. Defendants deny the remaining allegations contained in Paragraph 121 of the Complaint.

122.    In response to the allegations contained in Paragraph 122 of the Complaint, Defendants admit that no officer was disciplined for the Hines incident. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 122 of the Complaint.

123. In response to the allegations contained in Paragraph 123 of the Complaint, Defendants state that the incident involving the police involved shooting of Deaunte Bell-McGrew is accurately described in the case *Cooper v. City of Columbus*, 2023 U.S. App. LEXIS 2629 (6th Cir.) and is not accurately described in Paragraph 123 of the Complaint. Answering further, Defendants state that both the trial and appellate courts determined that the CPD officers involved in that case did not violate Mr. Bell-McGrew's constitutional rights. Summary judgment was granted in favor of the involved officers and the City. Defendants deny the remaining allegations contained in Paragraph 123 of the Complaint.

124. In response to the allegations contained in Paragraph 124 of the Complaint, Defendants admit that no officer was disciplined for the Bell-McGrew incident and deny the other allegations contained in Paragraph 124 of the Complaint.

125. In response to the allegations contained in Paragraph 125 of the Complaint, Defendants state that the incident involving Jaron Thomas is accurately described in the case *Wiley v. City of Columbus, Ohio*, 36 F.4th 661 (6th Cir. 2022) and is not accurately described in Paragraph 125 of the Complaint. Answering further, Defendants state that both the trial and appellate courts determined that the CPD officers involved in that case did not violate Mr. Thomas' constitutional rights. Summary judgment was granted in favor of the involved officers and the City. Defendants deny the remaining allegations contained in Paragraph 125 of the Complaint.

126. In response to the allegations contained in Paragraph 126 of the Complaint, Defendants state that the incident involving Jaron Thomas is accurately described in the case *Wiley v. City of Columbus, Ohio*, 36 F.4th 661 (6th Cir. 2022) and is not accurately described in Paragraph 126 of the Complaint. Answering further, Defendants state that both the trial and appellate courts determined that the CPD officers involved in that case did not violate any clearly established

constitutional right. Summary judgment was granted in favor of the involved officers and the City. Defendants deny the remaining allegations contained in Paragraph 126 of the Complaint.

127. In response to the allegations contained in Paragraph 127 of the Complaint, Defendants admit that no officer was disciplined for the Jaron Thomas incident.

128. Defendants deny the allegations contained in Paragraph 128 of the Complaint.

129. Defendants deny the allegations contained in Paragraph 129 of the Complaint.

130. In response to the allegations contained in Paragraph 130 of the Complaint, Defendants state that on June 14, 2017, CPD Chief Kim Jacobs recommended that Officer Rosen receive a 24-hour suspension. Defendants deny all other allegations contained in Paragraph 130 of the Complaint.

131. In response to the allegations contained in Paragraph 131 of the Complaint, Defendants state: (a) the City's Director of Public Safety decided to terminate Officer Rosen; (b) the issue went to arbitration; (c) an arbitrator determined that Officer Rosen acted within policy; and (d) Officer Rosen was reinstated to his position with back pay.

132. Defendants admit the allegations contained in Paragraph 132 of the Complaint.

133. Defendants admit the allegations contained in Paragraph 133 of the Complaint.

134. Defendants deny the allegations contained in Paragraph 134 of the Complaint.

135. In response to the allegations contained in Paragraph 135 of the Complaint, Defendants state that during Davis' resistance, an officer deployed his Taser for a combined 55 seconds over multiple cycles, not during one continuous cycle, and still did not achieve compliance by Davis. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 135 of the Complaint.

136. Defendants admit the allegations contained in Paragraph 136 of the Complaint.

137. Defendants admit the allegations contained in Paragraph 137 of the Complaint.

138. Defendants deny the allegations contained in Paragraph 138 of the Complaint.

139. Defendants deny the allegations contained in Paragraph 139 of the Complaint.

140. Defendants deny the allegations contained in Paragraph 140 of the Complaint.

141. Defendants deny the allegations contained in Paragraph 141 of the Complaint.

142. Defendants admit the allegations contained in Paragraph 142 of the Complaint.

143. Defendants admit the allegations contained in Paragraph 143 of the Complaint.

144. In response to the allegations contained in Paragraph 144 of the Complaint, Defendants state: (a) on August 17, 2018, multiple officers used force on Brian Denbow; (b) one office struck Denbow in his face over a fence while Denbow was still on his own property; (c) that same officer damaged a wooden plank of Denbow's privacy fence by partially pulling it off; (d) multiple officers then entered Denbow's property; (e) Denbow was tackled and punched by multiple officers; and (f) those officers acted outside of City policy.

145. Defendants admit the allegations contained in Paragraph 145 of the Complaint.

146. In response to the allegations contained in Paragraph 146 of the Complaint, Defendants admit that one of the officers involved in the Denbow incident was given an 8-hour suspension with the option to forfeit eight hours of accrued leave. Another involved officer received a longer suspension.

147. Defendants deny the allegations contained in Paragraph 147 of the Complaint.

148. Defendants deny the allegations contained in Paragraph 148 of the Complaint.

149. Defendants admit the allegations contained in Paragraph 149 of the Complaint.

150. Defendants deny the allegations contained in Paragraph 150 of the Complaint.

151. Defendants admit the allegations contained in Paragraph 151 of the Complaint.

152. In response to the allegations contained in Paragraph 152 of the Complaint, Defendants admit: (a) on December 22, 2020, a CPD Officer shot Andre Hill four times; (b) Mr. Hill died from his gunshot wounds; and (c) upon information and belief, at the moment Mr. Hill was shot, he was holding a cellphone in one hand and a key ring in the other hand. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations regarding Mr. Hill's relationship with anyone in the property where the incident occurred.

153. Defendants admit the allegations contained in Paragraph 153 of the Complaint.

154. Defendants admit the allegations contained in Paragraph 154 of the Complaint.

155. In response to the allegations contained in Paragraph 155 of the Complaint, Defendants admit: (a) in August 2019, Matrix, a third-party consultant hired by the City, released the report of its operational review of the Columbus Division of Police; (b) that one of Matrix's many recommendations was that "CDP must address the significant disparity of use of force against minority residents by continuing intense training, education, monitoring and reporting on use of force within the Division"; and (c) that Matrix wrote on page 208 of its report that "When examining use of force applications from a demographic perspective there was a clear and discernable disparity of application between 'black' and 'white' contacts." Answering further, Defendants deny any wrongdoing and deny any remaining allegations contained in Paragraph 155 of the Complaint.

156. Defendants deny the allegations contained in Paragraph 156 of the Complaint.

157. Defendants deny the allegations contained in Paragraph 157 of the Complaint.

158. In response to the allegations contained in Paragraph 158 of the Complaint, Defendants admit: (a) in August 2019, Matrix, a third-party consultant hired by the City, released the report of its operational review of the Columbus Division of Police; (b) as part of the study of CPD, Matrix' project team conducted internal and external surveys and focus groups; and (c) according to

Matrix, an internal employee survey showed that, 30% of respondents who identified as black stated they have witnessed an officer discriminate against a member of the public. Defendants deny any remaining allegations contained in Paragraph 158 of the Complaint.

159.     In response to the allegations contained in Paragraph 159 of the Complaint, Defendants admit: (a) in August 2019, Matrix, a third-party consultant hired by the City, released the report of its operational review of the Columbus Division of Police; (b) as part of the study of CPD, Matrix' project team the project team distributed an anonymous survey to Division employees in order to gauge their opinions on a variety of topics relevant to the study; (c) according to Matrix, the internal employee survey showed that nearly 70% of Black respondents said that they have witnessed discrimination within the Division of Police; and (d) according to Matrix, more than half of Black respondents said they have experienced discrimination within the Division in the previous 5 years.

160.     Defendants admit the allegations contained in Paragraph 160 of the Complaint.

161.     In response to the allegations contained in Paragraph 161 of the Complaint, Defendants admit that the article was published. Defendants deny any other allegation contained in Paragraph 161 of the Complaint.

162.     In response to the allegations contained in Paragraph 162 of the Complaint, Defendants state: (a) in June of 2022, a federal jury found that the City racially discriminated against and retaliated against CPD Lieutenant (now Commander) Melissa McFadden by reassigning her to CPD's property room pending an investigation into multiple allegations that she had committed EEO violations;  and (b) nobody was disciplined regarding Lt. McFadden's complaint, that is, that she was treated differently by being reassigned to CPD's property room pending the investigation of the EEO complaints made against her.

163.     Defendants deny the allegations contained in Paragraph 163 of the Complaint.

164.   Defendants deny the allegations contained in Paragraph 164 of the Complaint.

165.   Defendants deny the allegations contained in Paragraph 165 of the Complaint.

166.   Defendants deny the allegations contained in Paragraph 166 of the Complaint.

167.   Defendants deny the allegations contained in Paragraph 167 of the Complaint.

168.   Defendants admit the allegations contained in Paragraph 168 of the Complaint.

169.   Defendants admit the allegations contained in Paragraph 169 of the Complaint.

170.   In response to the allegations contained in Paragraph 170 of the Complaint, Defendants admit that Columbus Police officers generally have the option to work special duty which refers to the hiring of an off-duty police officer for security, traffic control, or escorts within the City of Columbus. Answering further, applicants for parades and certain outdoor events may be required to hire special duty police for traffic control purposes. Defendants deny the remaining allegations contained in Paragraph 170 of the Complaint.

171.   In response to the allegations contained in Paragraph 171 of the Complaint, Defendants state that policing is an extremely dangerous profession. Defendants deny the remaining allegations contained in Paragraph 171 of the Complaint.

172.   In response to the allegations contained in Paragraph 172 of the Complaint, Defendants state: (a) policing is an extremely dangerous profession; and (b) there are multiple other professions that are also dangerous. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 172 of the Complaint.

173.   In response to the allegations contained in Paragraph 173 of the Complaint, Defendants state: (a) policing can involve handing violent crime; and (b) policing involves multiple other duties in addition to handling violent crime. Defendants lack knowledge or information

sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 173 of the Complaint.

174.    In response to the allegations contained in Paragraph 174 of the Complaint, Defendants admit that a comprehensive review of the operations of CPD's Internal Affairs Bureau was conducted in the first quarter of 2016 by the Police Executive Research Forum (PERF).

175.    Defendants deny the allegations contained in Paragraph 175 of the Complaint.

176.    Defendants deny the allegations contained in Paragraph 176 of the Complaint.

177.    Defendants deny the allegations contained in Paragraph 177 of the Complaint.

178.    Defendants deny the allegations contained in Paragraph 178 of the Complaint.

179.    Defendants deny the allegations contained in Paragraph 179 of the Complaint.

180.    Defendants deny the allegations contained in Paragraph 180 of the Complaint.

181.    Defendants deny the allegations contained in Paragraph 181 of the Complaint.

182.    In response to the allegations contained in Paragraph 182 of the Complaint, Defendants state that any sworn testimony paraphrased in Paragraph 182 of the Complaint must be read in whole and was not fully cited to by Plaintiff so Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations regarding that purported testimony. Defendants deny the remaining allegations contained in Paragraph 182 of the Complaint.

183.    Defendants deny the allegations contained in Paragraph 183 of the Complaint.

184.    In response to the allegations contained in Paragraph 184 of the Complaint, Defendants admit that one of the Bureau Recommendations contained in the 2021 Internal Affairs Bureau Annual Report was the following: "As for staffing within the Internal Affairs Bureau, it is understood within the bureau that the filling of open investigator and administrative positions must

be delayed. Even though the bureau has not been fully staffed since March 2020, staffing shortages exist Division-wide and other high priority positions must be filled first."

185.    In response to the allegations contained in Paragraph 185 of the Complaint, Defendants admit that Article 8 of the collective bargaining agreement (CBA) between the City of Columbus and Fraternal Order of Police Capital City Lodge No. 9 provides the contractual timelines for completion of citizen complaints. In particular, Article 8.14 states, "The investigation of Citizen Complaints shall be concluded within ninety (90) days after the date the complaint was received by the City." In addition, Article 8.14 states, "If the applicable time limit is not met, or the investigation otherwise exceeds one-hundred eighty (180) days, no member will be disciplined arising out of the investigation of such citizen complaint."

186.     Defendants deny the allegations contained in Paragraph 186 of the Complaint.

187.    Defendants deny the allegations contained in Paragraph 187 of the Complaint.

188.    Defendants deny the allegations contained in Paragraph 188 of the Complaint.

189.    Defendants deny the allegations contained in Paragraph 189 of the Complaint.

190.    Defendants deny the allegations contained in Paragraph 190 of the Complaint.

191.    Paragraph 191 of the Complaint contains legal conclusions to which no response is required. Answering further, Defendants state that the City's obligations regarding indemnification is controlled by O.R.C. § 2744.07.

192.    Defendants deny the allegations contained in Paragraph 192 of the Complaint.

193.    Defendants deny the allegations contained in Paragraph 193 of the Complaint.

194.    In response to the allegations contained in Paragraph 194 of the Complaint, Defendants state that in the City of Columbus, misdemeanor offenses are generally prosecuted by the

Columbus City Attorney, and felony offenses are generally prosecuted by the Franklin County Prosecutor's Office, but situations can vary based on the facts and circumstances of each case.

195.　Defendants deny the allegations contained in Paragraph 195 of the Complaint.

196.　Defendants deny the allegations contained in Paragraph 196 of the Complaint.

197.　Defendants deny the allegations contained in Paragraph 197 of the Complaint.

198.　Defendants deny the allegations contained in Paragraph 198 of the Complaint.

199.　Defendants deny the allegations contained in Paragraph 199 of the Complaint.

200.　Defendants deny the allegations contained in Paragraph 200 of the Complaint.

201.　Defendants deny the allegations contained in Paragraph 201 of the Complaint.

202.　Defendants deny the allegations contained in Paragraph 202 of the Complaint.

203.　Defendants deny the allegations contained in Paragraph 203 of the Complaint.

204.　In response to the allegations contained in Paragraph 204 of the Complaint, Defendants state: (a) the City's Director of Public Safety decided to terminate Officer Rosen; (b) the issue went to arbitration; (c) an arbitrator determined that Officer Rosen acted within policy; and (d) Officer Rosen was reinstated to his position with back pay.

205.　Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 205 of the Complaint.

206.　Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 206 of the Complaint.

207.　In response to the allegations contained in Paragraph 207 of the Complaint, Defendants state: (a) the City's Director of Public Safety decided to terminate Officer Rosen; (b) the issue went to arbitration; (c) an arbitrator determined that Officer Rosen acted within policy; and (d) Officer Rosen was reinstated to his position with back pay.

208.    Defendants deny the allegations contained in Paragraph 208 of the Complaint.

209.    Defendants deny the allegations contained in Paragraph 209 of the Complaint.

210.    Defendants deny the allegations contained in Paragraph 210 of the Complaint.

211.    Defendants deny the allegations contained in Paragraph 211 of the Complaint.

212.    Defendants deny the allegations contained in Paragraph 212 of the Complaint.

213.    Defendants deny the allegations contained in Paragraph 213 of the Complaint.

214.    Defendants deny the allegations contained in Paragraph 214 of the Complaint.

215.    Defendants deny the allegations contained in Paragraph 215 of the Complaint.

216.    Defendants deny the allegations contained in Paragraph 216 of the Complaint.

217.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 217 of the Complaint.

218.    Paragraph 218 contains legal conclusions and non-factual statements to which no response is required. To the extent a response to such legal conclusions and non-factual statements is required, Defendants state that the City's duties are prescribed by law. Answering further, Defendants state that they require, instruct, and train the members of the Columbus Division of Police to protect everyone's constitutional rights.

219.    Paragraph 219 contains legal conclusions and non-factual statements to which no response is required. To the extent a response to such legal conclusions and non-factual statements is required, Defendants state that Bryant is and was the City's Chief of Police and her duties are prescribed by law. Answering further, Defendants state that Bryant takes all steps necessary to ensure that the members of the Columbus Division of Police protect everyone's constitutional rights, including but not limited to citizens who are the subject of a warrant, and that CPDs orders, rules, instructions, regulations, and training serve that same purpose.

220. Paragraph 220 contains legal conclusions and non-factual statements to which no response is required. To the extent a response to such legal conclusions and non-factual statements is required, Defendants deny any allegations in this paragraph.

221. Paragraph 221 contains legal conclusions and non-factual statements to which no response is required. To the extent a response to such legal conclusions and non-factual statements is required, Defendants deny any allegations in this paragraph.

222. Paragraph 222 contains legal conclusions and non-factual statements to which no response is required. To the extent a response to such legal conclusions and non-factual statements is required, Defendants deny any allegations in this paragraph.

223. Paragraph 223 contains legal conclusions and non-factual statements to which no response is required. To the extent a response to such legal conclusions and non-factual statements is required, Defendants deny any allegations in this paragraph.

224. In response to Paragraph 224 of the Complaint, Defendants incorporate all of the admissions, denials, and statements contained in the foregoing paragraphs of this Answer as if the same were fully rewritten and repeated here.

225. Defendants deny the allegations contained in Paragraph 225 of the Complaint.

226. Defendants deny the allegations contained in Paragraph 226 of the Complaint.

227. Defendants deny the allegations contained in Paragraph 227 of the Complaint.

228. Defendants deny the allegations contained in Paragraph 228 of the Complaint.

229. Defendants deny the allegations contained in Paragraph 229 of the Complaint.

230. Defendants deny the allegations contained in Paragraph 230 of the Complaint.

231. Defendants deny the allegations contained in Paragraph 231 of the Complaint.

232.    Defendants deny each and every allegation in the Complaint that is not specifically, expressly, and unequivocally admitted in this Answer.

<u>Additional Defenses</u>

233.    Plaintiff fails to state claims upon which relief can be granted.

234.    If Plaintiff is attempting to bring any claims against Bryant in her individual capacity, those claims are barred by the doctrine of qualified immunity.

235.    Bryant is not liable for punitive damages in her official capacity.

236.    Plaintiff is not entitled, or has no standing, to maintain the instant action as one for equitable relief such as declaratory or prospective injunctive relief.

237.    Plaintiff's claims are barred, in whole or in part, by Donovan Lewis' assumption of the risk.

238.    Plaintiff's claims are barred in whole or in part by Donovan Lewis' contributory and/or comparative fault.

239.    Plaintiff's claims are barred, in whole or in part, by any failure to mitigate any alleged damages.

240.    Defendants are entitled to all applicable immunities, defenses, set-offs, and other limitations set forth in Chapter 2744 of the Ohio Revised Code.

241.    Defendants reserve the right to assert such additional defenses that may become apparent as their investigation and discovery in this civil action proceeds.

**PRAYER FOR RELIEF**

242.    Having fully answered Plaintiff's Complaint, Defendants respectfully request that this Court issue and order (a) dismissing Plaintiff's claims with prejudice; (b) assessing costs to Plaintiff; and (c) awarding Defendants any and all other relief that the Court deems just, equitable, and/or necessary.

Respectfully submitted,

/s/ Westley M. Phillips
Westley M. Phillips (0077728) – LEAD
Alana V. Tanoury (0092265)
David J. Dirisamer (0092125)
Dexter W. Dorsey (0097657)
Assistant City Attorneys
CITY OF COLUMBUS, DEPARTMENT OF LAW
ZACH KLEIN, CITY ATTORNEY
77 North Front Street, Columbus, Ohio 43215
(614) 645-7385 / (614) 645-6949 (fax)
wmphillips@columbus.gov
avtanoury@columbus.gov
djdirisamer@columbus.gov
dwdorsey@columbus.gov

*Attorneys for Defendants*

## JURY DEMAND

Defendants respectfully request a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Westley M. Phillips
Westley M. Phillips (0077728)

Attorney for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that, on **May 21, 2024**, I electronically filed the foregoing with the Clerk of this Court by using the Court's electronic filing system. Copies will be served upon counsel by operation of this Court's electronic filing system on all parties who have filed an appearance in this matter.

/s/ Westley M. Phillips
Westley M. Phillips (0077728)