**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| Estate of Donovan Lewis, | Case No. 2:24-cv-01841 |
| Plaintiff, | Judge Michael H. Watson |
| v. | Magistrate Kimberly A. Jolson |
| The City of Columbus, Ohio | |
| and | |
| Chief Elaine Bryant, In her official capacity as an employee of the City of Columbus, | |
| Defendants. | |

---

**Motion of Fraternal Order of Police, Capital City Lodge #9**
**For Leave to Intervene as a Defendant**

---

The Fraternal Order of Police, Capital City Lodge No. 9 moves for leave to intervene as a defendant pursuant to Rule 24 of the Federal Rules of Civil Procedure. The grounds for this Motion are set forth in detail below in the Memorandum in Support.

Respectfully submitted,

*s/ Lathan J. Lipperman*
Lathan J. Lipperman (0095523)
Nicole E. Wannemacher (0078095) – Trial Attorney
Harshman, Wannemacher, Tipton & Lipperman
4683 Winterset Drive
Columbus, Ohio 43220
Telephone: 614.573.6944
Fax:        614.573.6948
Email: llipperman@hcands.com
          nwannemacher@hcands.com

*Counsel for Intervenor-Defendant*
*Fraternal Order of Police, Capital City Lodge #9*

## I.     Background

On April 18, 2024, Plaintiff Estate of Donovan Lewis filed its Complaint against Defendants City of Columbus ("City") and Chief of Police Elaine Bryant in her official capacity. Plaintiff alleges that the City and the Columbus Division of Police ("CPD") violated Donovan Lewis' Fourth and Fourteenth Amendment rights after he was shot during the execution of one or more arrest warrants. Plaintiff also broadly alleges that CPD engages in discriminatory police practices against Black residents and that such practices are tolerated by the City.

The movant, Fraternal Order of Police, Capital City Lodge #9 ("FOP"), is the exclusive collective bargaining representative of two bargaining units employed by CPD: one bargaining unit consists of officers and the other unit consists of all members below the rank of deputy chief but above officer. The FOP's authority, obligations, and role as a collective bargaining representative are established by Ohio Revised Code Chapter 4117; and it includes a duty to fairly represent all its members.

As part of its Complaint, Plaintiff's Prayer for Relief, seeks, among other things, eleven "reforms" purportedly addressed at what it asserts are CPD's discriminatory practices. Some of these reforms, if instituted, would violate the collective bargaining agreement between the City and the FOP ("CBA"). Stated differently, the relief sought by Plaintiff would dramatically affect and alter the terms and conditions of employment established for members under the CBA—rights and privileges the FOP has fought for decades to achieve and maintain.

The CBA, for example, contains several important provisions that govern wages, administrative investigations and discipline as well as past practices not explicitly outlined in the CBA. The imposition of Plaintiff's "reforms" would adversely affect not only those provisions and protections but the membership of the FOP itself who would be subject to those "reforms."  These adverse impacts amply demonstrate that the FOP has an immediate and vital interest in the subject matter of this litigation. Intervention is necessary to defend

2

the FOP's statutorily prescribed role as an exclusive labor representative and to protect the negotiated terms of its CBA.

## II.    Facts

The FOP and the City of Columbus are parties to a CBA which governs the terms and conditions of employment for all Division of Police officers below the rank of deputy chief. The FOP is the exclusive collective bargaining representative for approximately 1,800 sworn CPD members. Specifically, the FOP represents two bargaining units of employees who are covered by the CBA.  The first unit consists of all officers below the rank of sergeant, and the second unit consists of all officers in the ranks of sergeant, lieutenant, and commander.  The FOP's status as "exclusive representative" is derived from state law—specifically Section 4, 1983 Am. Sub. S.B. 133. That status imposes upon the FOP certain rights and obligations, including the right to enter into contracts governing the wages, hours, terms and conditions of employment for the employees it represents.

The FOP and the City have a mature collective bargaining agreement. In fact, the City and the FOP have had a collective bargaining agreement for decades. Many of the core rights and privileges in the agreement have likewise existed for decades. The FOP has fought very hard to achieve and maintain those protections and benefits. The FOP and the City very recently executed a successor collective bargaining agreement with effective dates of December 9, 2023 – December 8, 2026.[1]

Among other things, Plaintiff seeks an entirely new disciplinary system whereby members accrue "points" out of sustained complaints; the accumulation of so many points

---

[1] As that collective bargaining agreement was only very recently ratified, it has not yet been compiled into its final form and as such cannot be attached. Nonetheless, a copy of the prior collective bargaining agreement is attached hereto as Exhibit A. The prior agreement contains all the same sections and articles cited herein and any changes to the language are immaterial to the facts and analysis here.

then results in career disadvantages such as a mandatory change of assignment.  Plaintiff further asks the Court to "amend the City Charter" to create a new criminal and administrative investigative agency for officer-involved shootings. Finally, Plaintiff also requests relief that would deprive an officer of his or her pension under certain circumstances. Other demands could also affect members' safety and well-being such as the demand for family to have "immediate access" to any suspect that was hospitalized out of an officer-involved shooting.

The CBA contains several provisions that are directly implicated, and could be directly affected, by the instant litigation. Specifically, the reforms would violate the past practice provision, alter assignments and transfers, change how members earn overtime and special duty, entirely rewrite portions of the CBA governing internal investigations and discipline, and finally, run afoul of language guaranteeing members safe working conditions.

Moreover, members are required to follow all CPD Directives and Rules of Conduct. CPD Directive, Rule of Conduct 1.01 states "Division personnel shall obey the Constitutions of the United States and the State of Ohio and all federal, state, and local laws."  (appended hereto as Exhibit B).  Section 2921.44 of the Ohio Revised Code states that no law enforcement officer shall negligently do any of the following, "fail to prevent or halt the commission of an offense or to apprehend an offender, when it is in the law enforcement officer's power to do so alone or with available assistance." An officer who violates this provision can be criminally charged with dereliction of duty. In addition to potential criminal charges for not acting, a member can be disciplined for not following the Division Directives and Rules. Furthermore, Section 14.1 of the CBA provides that Division Rules and Directives are the proper subject of a grievance.

Plaintiff's Complaint, seeking to alter existing terms and conditions of employment for FOP members, was filed on April 18, 2024. That Complaint was served on Defendant City of

Columbus on May 13, 2024. The answer, therefore, is due on June 3, 2024. The City filed its answer on May 21, 2024.

The FOP, as the statutorily authorized collective bargaining representative of members below the rank of deputy chief, has an immediate and important interest in the subject matter of the instant litigation. And, as a party to a current CBA that is implicated and affected both by Plaintiff's claims and request for remedy, the FOP is a necessary party to this case.

### III.   Argument

#### A.  The FOP is entitled to intervene under F.R.C.P. 24(a)(2).

Rule 24(a)(2) of the Federal Rules of Civil Procedure provides:

(a) **Intervention of Right**.  On timely motion, the Court must permit anyone to intervene who:

\* \* \*

(2)  claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

A party seeking to intervene under Fed. R. Civ. P. 24(a)(2) thus must show: (1) It has an interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; (3) the existing parties do not adequately represent its interests; and, (4) the application for intervention is timely. *See Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997); *U.S. v. Detroit International Bridge Co.*, 7 F.3d 497, 499 (6th Cir. 1993); *Cuyahoga Valley Ry. Co. v. Tracey*, 6 F.3d 389, 395 (6th Cir. 1993).  Courts will construe Fed. R. Civ. P. 24 broadly in favor of applicants for intervention. *See Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991); *Michigan State AFL-CIO v. Miller*, *supra* at 1247 (noting that "close cases should be resolved in favor of recognizing an interest under Rule 24(a)").

**1. The FOP has an interest relating to the subject matter of this case.**

As noted above, the FOP is the exclusive collective bargaining representative of all sworn members of CPD below the rank of deputy chief. As such, the FOP is authorized—and legally obligated—to represent all bargaining unit members with respect to their wages, hours, and terms and conditions of employment; and the FOP is a party to a CBA that governs those matters.

The Plaintiff seeks, among other things, eleven "reforms," many of which would materially alter the terms and conditions contained in the CBA. For example, Plaintiff seeks a new disciplinary system whereby members would accrue "points" out of sustained complaints; the accumulation of so many points would then mandate a change of assignment. That demand, if implemented, would materially alter numerous provisions in the CBA. For example, Article 11 of the CBA governs, in great detail, how a member is awarded and involuntarily removed from an assignment. There is no language allowing a member to be removed from an assignment after accruing so many points—indeed there is no point system within the contract or at CPD generally. Therefore, instituting that change would violate and alter the provisions governing assignments and transfers in Article 11.

The "points" reform would also violate—and in fact completely excise the heart of—Article 10, which governs discipline. Specifically, that Article requires that any discipline or "career disadvantage" imposed be for "just cause"—a standard that requires the employer to meet several criteria before imposing discipline. Exhibit A, Section 10.1. Article 10 also imposes a "progressive discipline" standard whereby the employer must first use the lowest level of discipline before imposing harsher penalties (unless the offense is criminal in nature or very severe). Exhibit A, Section 10.3. Finally, the CBA also requires the employer to take into consideration the member's work record and any mitigating factors. *Id.*

By instituting a mandatory point system, offenses would no longer be corrected under the just cause standard. Instead of the individualized, progressive system required by the contract, members would be subject to arbitrary penalties that are decided before the fact. This would likewise rob a member of the contractually required review by the member's chain of command under certain circumstances. Exhibit A, Section 10.4. That review provides the affected member's supervision the chance to weigh-in on the administrative investigation, the findings of that investigation, and the recommendation regarding any discipline.

Likewise, requiring that an officer forfeit any patrol duties after a predetermined amount of points would constitute a "career disadvantage." For example, removing a member from patrol would 1) limit that member's overtime and special duty opportunities—substantially limiting income; 2) hamper available training opportunities—limiting the available assignments that member could take in the future; and 3) likely foreclose select assignments and promotional opportunities. In other words, the reform would impose a substantial career disadvantage in violation of Article 10.

Article 10 also outlines how long the Division retains disciplinary records and for how long such records may be used against a member. Exhibit A, Sections 10.10, 10.11. As the CBA and the Division use specific types of corrective action (e.g., documented constructive counseling, written reprimand, etc.), using a points system would require new contract language to govern its duration. Alternatively, the points would simply accrue in perpetuity for the duration of a member's career in violation of the CBA.

Beyond the points reform, the Plaintiff also seeks an amendment to the City Charter requiring the creation of an "operationally independent" entity empowered to conduct administrative and criminal investigations of officer-involved shootings. Ostensibly, Plaintiff seeks an "operationally independent" entity empowered to conduct administrative investigations that somehow differs from the operationally independent entity empowered to

7

conduct administrative investigations already provided for in the City Charter known as the Department of Inspector General ("DIG"). City of Columbus Charter, § 217. The same assumption must be made of the operationally independent Ohio Bureau of Criminal Investigations (BCI)—which under the City Code is responsible for conducting criminal investigations of officer-involved shootings. Columbus City Code § 1903.01(B).

The creation of a new entity to conduct administrative investigations would violate Article 8 of the CBA, which governs administrative investigations by the Department of Public Safety and DIG. Specifically, Section 8.1 states that, "Internal investigations shall be conducted by the chain of command, by the Equal Employment Opportunity Office (EEO), by personnel assigned to the Internal Affairs Bureau and/or the Office of the Inspector General (OIG)."[2] In other words, only the specifically designated entities are permitted to conduct administrative investigations. By creating an entirely new entity to conduct certain administrative investigations, the institution of the Plaintiff's reform would violate Section 8.1 of the CBA.

The contract also provides that members who retire in good standing are eligible to purchase their service handgun and receive a badge indicating their retired law enforcement status. Exhibit A, Section 36.2. Presently, a member is eligible to retire in good standing even if under an administrative investigation, provided the Chief does not determine that the investigation could result in a suspension of more than 120 hours. Exhibit A, Section 14.1; Division Directive 8.05(II)(G) (attached hereto as Exhibit C).  Plaintiff's reform requiring any member that retires while under *any* investigation to lose his or her pension and all other benefits would therefore violate Sections 14.1 and 36.2 of the CBA and Division Directive 8.05.

---

[2] The "Office of Inspector General" is the same as the "Department of Inspector General."

Requiring members to forfeit their pension if they retire while under investigation would also force some members to choose between upholding their duty to enforce the law or losing their pension. Whenever an officer-involved critical incident[3] occurs, for example, the City Code requires the Chief of Police to refer to the matter for criminal investigation to BCI. 1903.01(B). That referral is automatic: The facts of the incident are irrelevant—every member is placed under investigation. Therefore, even if there is no indication the officer acted outside the law or policy—and indeed even if that officer is later cleared of all wrongdoing by that investigation—if the member retires while still under investigation then, under Plaintiff's reform, his or her pension and all other benefits would be lost.

The implementation of this demand would present officers seeking to soon retire with multiple Catch 22s: First, either fire their weapon and lose their pension, or refrain from firing in which case the officer or a third party would likely be grievously injured or killed by the suspect, but the officer's pension would be intact. Officers would have another impossible choice: either fire their weapon and automatically lose their pension or refrain from firing and violate their statutory duty to enforce the law by failing to take action against a violent suspect, thereby risking a dereliction of duty charge. Of course, ironically, if an officer is placed under investigation for dereliction of duty, then he or she would still lose their pension under Plaintiff's reform.

Moreover, it would not be a matter of simply waiting to retire until the investigation was over: Some criminal investigations of officer-involved shootings have taken *several years*. Even once the criminal investigation is complete, CPD may then decide to conduct an

---

[3] As used here, "critical incident" means an officer-involved shooting that results in injury or death; a use of force that results in life-threatening injury or death; a life-threatening injury or death that occurs while a suspect is being taken into custody; or a pursuit or stopping tactic that results in death or injuries likely to result in death. Columbus City Code § 1903.01(B).

administrative investigation which could run for several more years. Delaying retirement for years on end is simply not feasible for most officers. Worse still, for members in the Deferred Retirement Option Plan, the pension system will require them to retire by a certain date.

In other words, Plaintiff's demands would not only necessarily alter multiple bedrock and decades' old provisions within the CBA, but the demands would also place officers' lives in jeopardy and require the officer to either commit the criminal offense of dereliction of duty or uphold their oath and lose their pension.

The above reforms would also implicate the CBA's past practice clause, which prohibits the City from altering any known and continuous past practice without first negotiating and reaching agreement upon such a change. *See* Exhibit A, Section 2.7. A past practice is "a policy, procedure or practice which has been continuous" and does not cost the City money or provide a monetary benefit to a member. Exhibit A, Section 1.1. In other words, a past practice is generally an accepted way of doing things that is not necessarily explicitly contained in the collective bargaining agreement but nonetheless is protected by the agreement.  Established past practices impacted by Plaintiff's claims include but are not limited to investigative procedures, disciplinary procedures, the durations of records, and assignments and transfers.

Finally, R.C. 4117 and Section 19.1 of the CBA guarantee officers and the FOP "a seat at the table" with respect to all issues affecting safety and safe working conditions. As such, the FOP has a contractual right to address any policies and procedures that impact member safety. One of Plaintiff's "reforms" would be the requirement to grant **any** suspect that is hospitalized after an officer-involved shooting "immediate access" to the suspect's family. This requirement, if implemented, would endanger the lives of officers, civilian hospital staff, as well as the prisoner's family. For example, in July of 2023 a suspect shot at and attempted to kill multiple CPD officers on I-70. And in fact, the suspect shot and almost killed one CPD

officer. If that suspect was shot and taken to Grant hospital, Plaintiff's "reform" would require that suspect be given "immediate access" to his family despite the grave threat he presented to those around him. That "reform," therefore would need to be negotiated with the FOP.

### 2. The disposition of this case may impair or impede, as a practical matter, the FOP's ability to protect its interests.

An applicant seeking intervention need only show it is *possible* that its legal interests will be impaired should intervention be denied. *Michigan State AFL-CIO v. Miller*, *supra* at 1247. Imposition of the Plaintiff's reforms would violate multiple provisions in the CBA. Such a decision, for instance, would preclude enforcement, in whole or in part, of the past practices clause (Section 2.7); alter assignments and transfers (Article 11); change how discipline is imposed and the duration of that discipline (Article 10); modify how investigations are conducted (Article 8); cause officers to violate Division Directives (Section 14.1); and limit or eliminate the FOP's ability to address safety concerns (Section 19.1). Beyond these contractual issues, some of the "reforms" sought by Plaintiff would, if imposed, necessarily require some officers to choose between upholding their oath to enforce the law or lose their pension. The same is true of the choice between an officer protecting their life or the life of another and losing their pension.

This Court has granted the FOP's Motion to Intervene in three prior cases which also had the ability to impact members' collective-bargaining rights. *See generally United States of America v. City of Columbus, Ohio*, Case No. 2:99-CV-1097 (S.D. Ohio 2000) (appended hereto as Exhibit D); *Shreve v. Franklin County*, 2011 U.S. Dist. LEXIS 6833 (S.D. Ohio 2011); *Alsaada v. City of Columbus*, 2021 U.S. Dist. LEXIS 82938 (S.D. Ohio 2021).

That this Court permitted the FOP to intervene in *Alsaada* is particularly instructive for a few reasons. First, in that case the plaintiffs were primarily seeking to restrain the use of certain types of force during demonstrations. FOP primarily argued that restraining certain

uses of force on those actively breaking the law presented a significant safety concern that implicated Sections 19.1 and 2.7 of the CBA.

In granting the FOP's Motion to Intervene in *Alsaada*, Judge Marbley ruled,

> This Court holds that the FOP's asserted interest is substantial and well within the subject matter of this case. While Plaintiffs are correct in stating that this action arises pursuant to § 1983, the requested relief sought by Plaintiffs, if granted, will potentially have a substantial impact on the terms of the CBA and the collective bargaining rights of the FOP and its members. *Shreve*, 2011 WL 250407 at *2 (same).

*Alsaada*, 2021 U.S. Dist. LEXIS at 5-6.

Judge Marbely likewise ruled the FOP "has established that its legal interests could be impaired absent its intervention." *Id.* at 6.

Here, in contrast, Plaintiff seeks sweeping changes, far more significant than the plaintiffs in *Alsaada*. Rather than merely restraining certain uses of force under certain conditions, Plaintiff here seeks to recreate the entire disciplinary process, excising Article 10 from the CBA. It seeks to impose mechanisms that would markedly alter members' wages and working conditions. In other words, if the FOP demonstrated a legal interest that would be impaired in *Alsaada*, then that demonstration applies with even greater force here.

While the FOP can easily demonstrate legal interests in this case that would be impaired without intervention, it can also show that many of the facts here are similar to those presented in *Alsaada*. Indeed, though an officer-involved shooting underlies this action while *Alsaada* concerned lower levels of force used during rioting and demonstrations, Plaintiff here raises many of the very same factual allegations concerning the FOP, the CBA, and CPD's history and disciplinary processes—some quite literally identical: A significant portion of its

Complaint was taken directly from the *Alsaada* Amended Complaint.[4] In other words, if the facts warranted intervention in *Alsaada*, then the facts likewise warrant intervention here.

As such, there is no question the disposition of this case may impair or impede—and in fact *would* impair or impede—as a practical matter, the FOP's ability to protect its interests.

### 3. The FOP's interests cannot be adequately protected by the existing parties.

An applicant for intervention has a "minimal" burden to establish that existing parties do not adequately represent its interests. *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972) (citation omitted). The movant need only show that the existing party who purports to seek the same outcome will not make all the movant's arguments. *Michigan State AFL-CIO v. Miller*, *supra* at 1247 (citing *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1498-99 (6th Cir. 1995)). While the Defendant in the instant action may vigorously defend its interests in this case, the Defendant does not necessarily have any interest in protecting the statutory or contractual rights of the FOP or its members.

As this Court has previously noted, "the interests of an employer and its employees in a collective bargaining agreement are unlikely to be entirely congruent or coextensive." *See United States of America v. City of Columbus, Ohio*, Case No. 2:99-CV-1097, p. 8 (Opinion and Order filed Feb. 7, 2000) (attached hereto as Exhibit D). Indeed, as employer and union, the City often takes positions directly at odds with the FOP and its members. This is especially true for many of the CBA provisions implicated by the Plaintiff's sought relief (i.e., Section 2.7 – Past Practices; Article 8 – Internal Investigations; Article 10 – Corrective/Disciplinary

---

[4] Specifically, most of Plaintiff's "Systemic Division of Police Failures" subsection—which addresses the FOP, the collective bargaining agreement, and the discipline of police officers—was lifted word for word from the *Alsaada* Amended Complaint.

Action and Records; and Article 11 – Assignments and Transfers). Likewise, Mayor Ginther has made numerous public criticisms of the FOP in recent years. Therefore, only the FOP can properly and adequately defend its interests in this litigation.

### 4. The FOP's application for intervention is timely.

There are five factors applicable when considering whether an application to intervene is timely:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of its interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure, after it knew or reasonably should have known of its interest in the case, to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention. *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989).

The instant cause of action was filed by Plaintiff on April 18, 2024. That Complaint was served on Defendant City of Columbus on May 13, 2024. An answer, therefore, is due on June 3, 2024. FOP's intervention would not affect any discovery or dispositive motion deadlines. Nor have there been any decisions rendered on the merits of Plaintiff's claim. FOP, in other words, seeks intervention at the outset of this action, before the deadline for the first responsive pleading has passed. Accordingly, FOP's intervention would prejudice neither Plaintiff nor Defendant City of Columbus. The FOP seeks intervention, as discussed in detail above, to protect important FOP contractual and statutory interests, which it holds as the exclusive collective bargaining representative of all bargaining unit members (who collectively will be directly affected by this case).

Based upon all of the foregoing, the FOP's application to intervene is timely; there is no prejudice to the existing parties by the FOP's intervention; and the FOP is uniquely situated as being the only party that can adequately protect its own contractual interests, and the contractual rights and privileges of bargaining unit members.

The FOP's Motion to Intervene therefore should be deemed timely under F.R.C.P. 24(a)(2).

### B. In the alternative, the FOP should be permitted to intervene under Fed. R. Civ. P. 24(b).

Should the Court deny the FOP's motion to intervene as of right under Fed. R. Civ. P. 24(a)(2), it is respectfully submitted that the FOP should be permitted to intervene under Fed. R. Civ. P. 24(b). Under that rule, intervention is appropriate when the movant "has a claim or defense that shares with the main action a common question of law or fact." In this case, the main action will involve questions of fact related to the use of force by an FOP member. As Plaintiff has asserted CPD engages in discriminatory practices towards Black residents, other uses of force in prior, unrelated instances by FOP members will also be at issue. Similarly, questions of law may involve whether the Plaintiff is entitled to a remedy that would alter, amend, or contravene specific provisions of the CBA. As such, the FOP's claims and defenses, which relate to both its role as collective bargaining representative and the obligations and limitations imposed by its CBA, share common questions of law and fact with the claims and defenses of the existing parties.

In addition, since it is "[t]he purpose of the rule allowing intervention to prevent a multiplicity of suits where common questions of law or fact are involved," *Washington Elec. v. Mass. Mun. Wholesale Electric*, 922 F.2d 92, 97 (2d Cir. 1990), it would defeat the purpose of the rule to force the FOP to subsequently litigate the effects upon its CBA that result from the instant case.

### IV. Conclusion

The FOP meets the requirements for intervention as of right, as set forth in F.R.C.P. 24(a)(2). It has a direct and substantial interest in the subject matter of this case; the resolution of this case would impede or impair its interest; the existing parties do not

15

represent the FOP's particular interests; and the FOP's motion is timely. The FOP also satisfies the requirements of Rule 24(b) for permissive intervention. Therefore, the FOP respectfully requests that the Court grant its Motion to Intervene as a defendant in this action.

Respectfully submitted,

*s/ Lathan J. Lipperman*
Lathan J. Lipperman (0095523)
Nicole E. Wannemacher (0078095) – Trial Attorney
Harshman, Wannemacher, Tipton & Lipperman
4683 Winterset Drive
Columbus, Ohio 43220
Telephone: 614.573.6944
Fax:        614.573.6948
Email: lipperman@hcands.com
        nwannemacher@hcands.com

*Counsel for Intervenor-Defendant*
*Fraternal Order of Police, Capital City Lodge #9*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing Motion of Fraternal Order of Police, Capital City Lodge #9 For Leave to Intervene as a Defendant and attached exhibits were filed electronically on this 27th day of May, 2024, with the Clerk of Court using the CM/ECF System, which will provide notice of filing to all registered parties.

<u>*By /s/ Lathan J. Lipperman*</u>
Lathan J. Lipperman (0095523)